## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREA NELKEN,                          )
                                        )   No.: 2:22-cv-00777-RJC
    Plaintiff,      )
                                        )
  v.                          )   Judge Robert J. Colville
                                        )
WHOLE  FOODS  MARKET  GROUP,  INC.      )
i/t/d/b/a Whole  Foods  Market and WHOLE )
FOODS MARKET IP, INC. i/t/d/b/a Whole   )
Foods Market,                           )
                                        )
    Defendants.     )


## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge

  Before the Court is the Motion for Summary Judgment (ECF No. 33) filed by Defendants,

Whole Foods Market Group, Inc. i/t/d/b/a Whole Foods Market and Whole Foods Market IP, Inc.

i/t/d/b/a Whole Foods Market.  The Court has jurisdiction in this matter pursuant to 28 U.S.C. §

1332(a).  The Motion has been fully briefed and is ripe for disposition.

### I.  Factual Background & Procedural History

### A.  Procedural History

  This action arises out of a March 14, 2020 trip and fall at Defendants' property.[1]  Br. in

Supp., 3; Resp. in Opp., 3.  Plaintiff filed her Complaint in the Court of Common Pleas of

Allegheny County on April 8, 2022 alleging a cause of action for negligence.  Compl., ECF No.

2, Ex. C.  Defendants filed their Answer in the Court of Common Pleas on May 4, 2022 and alleged

---

[1] Neither party filed a statement of material facts as required by the Local Rules.  LCvR 56(B)(1).  Therefore, the Court will review the facts as set forth in the record, Defendants' Brief in Opposition, ECF No. 33, and Plaintiff's Response in Opposition, ECF No. 34.

in their New Matter that Plaintiff's damages were equal to or less than $75,000.  Answer, ECF No. 2, Ex. D.  Plaintiff filed her Reply to Defendants' New Matter on May 9, 2020, and denied that her damages were equal to or less than $75,000.  Reply to New Matter, ECF No. 2, Ex. E.  As a result of Plaintiff's denial, and the existence of diversity between the parties, Defendants filed their Notice of Removal on May 26, 2022.  Notice of Removal, ECF No. 2.

On January 9, 2024, Defendants filed their Motion for Summary Judgment and Brief in Support.  ECF No. 33.  On February 6, 2024, Plaintiff filed her Response in Opposition.  ECF No. 34.  On February 22, 2024, Defendants filed their Reply in Support.  ECF No. 35.

### B. Factual Background

Unless otherwise noted, the following facts are not in dispute:

On March 14, 2020, Plaintiff entered the Whole Foods located at 5880 Centre Avenue, Pittsburgh, PA 15206.  Resp. in Opp. 3.  In sum, Plaintiff alleges that she tripped on a loose green wire while at Defendants' store which caused her to fall.  Br. in Supp. 3; Resp. in Opp. 3.  Plaintiff testified that this incident occurred around 8:20 a.m. or 8:25 a.m.  Pl. Depo. 42:17-20, ECF No. 33, Ex. C; ECF No. 34, Ex. A.  Specifically, Plaintiff explained the incident as follows:

Q.    And so tell me what happened from there?

A.    I grabbed the parsley, several bunches of parsley.  And parsley -- and I was standing in front of it, and I turned to put it in my cart, my cart was to my left and behind me a couple of steps, so that I wasn't blocking anybody with it.  So I turned, went to take the step to it and my right leg -- my right boot caught that green wire and I fell forward into a bunch of crates and that cabinet with the berries.

*Id.* 54:10-20.

Plaintiff testified that the parsley was located in a refrigerated area along the wall that contained a produce display.  *Id.* 53:2-11.  The bottom of the produce display was about knee height and the parsley was on a shelf at about chest height.  *Id.* 56:6-7, 57:1-3.  The loose wire

came down from the refrigeration unit and was located on the floor under the unit.  *Id.* 61:22-62:5.
Plaintiff does not remember looking at the floor prior to grabbing the parsley and did not have to
move her feet when grabbing the parsley, until she turned to put the parsley in her cart.  *Id.* 59:8-
24.  When she turned, Plaintiff pivoted on her left foot and brought her right foot around before
falling.  *Id.* 60:4-24.  After falling, Plaintiff testified that she looked back to see what happened
and saw the wire under the refrigerator wall.  *Id.* 61:15-17.  Plaintiff did not feel the wire as she
fell.  *Id.* 61:8-14.  Plaintiff was also not aware of the amount of time the wire was present or
whether there had been prior complaints about the wire.  *Id.* 77:2-18.  Plaintiff testified that after
falling, Defendants' employee, Joe Gasperoni, spoke with her.  *Id.* 73:10-12.  Plaintiff testified
that Mr. Gasperoni informed her that the wire "was not even a functional cord and they were going
to cut it off."  *Id.* 73:13-14.

Mr. Gasperoni, an assistant store team leader, testified that he did not see Plaintiff fall but
was called to the customer service desk to speak with her after the incident.  Gasperoni Depo. 32:1-
7, ECF No. 33, Ex. E; ECF No. 34, Ex. H.  Mr. Gasperoni spoke with Plaintiff and then went to
check out the area in question by himself.  *Id.* 34:15-19.  He took a photo of the wire and then
"taped the wire up underneath the unit so it wasn't exposed anymore."  *Id.* 37:8-12.  Mr. Gasperoni
completed an incident report after speaking with Plaintiff and recorded that the incident took place
at 8:25 a.m.  *Id.* 31:3-21; Incident Report, ECF No. 33, Ex.; ECF No. 34; Ex. C.



Above is the photograph taken by Mr. Gasperoni after the incident. Gasperoni Depo. 48:20-49:11; ECF No. 33, Ex. D; ECF No. 34, Ex. B. Plaintiff was shown this photograph and testified that, in comparison to the photograph, the wire was more exposed at the time of her fall. Pl. Depo. 65:4-7. She testified that the photograph shows that a foot of the cord was exposed, while she observed that several feet were exposed. *Id.*

Mr. Gasperoni testified that Defendants had porters who were responsible for sweeping the store fifteen minutes before the store opened and then within a fifteen-minute window before the next hour. Gasperoni Depo. 54:11-15; 68:10-69:18. So, if the first walk through was at 7:45 then "the next walk should be started between 8:45 and 9[:00]." *Id.* 69:20-23. Mr. Gasperoni described that porters:

> A. [] clean the store. They're responsible for all of the, you know, bathroom facilities. Making sure all the bathrooms are stocked for customers. Making sure that the sales floor is free of debris. [J]ust making sure that, you know, if a customer drops something on the floor, we call the porter to come and clean it up.

*Id.* 70:15-21.  Further, Mr. Gasperoni testified that it was part of the porter's, or any employee's, responsibility to report anything like a loose wire.  *Id.* 72:15-73:1.

On March 14, 2020, Mr. Gasperoni did not remember anyone, either an employee or customer, reporting that a wire was exposed, but believes that if anyone did, "it would have been taken care of."  *Id.* 74:10-75:13.  Additionally, Mr. Gasperoni testified that he walked the floor before the store opened on March 14th to ensure that the floor was clear and did not see the exposed wire.  *Id.* 75:14-76:9.  He testified that had no idea how the green cord was exposed and did not have any personal knowledge of it being exposed prior to the incident.  *Id.* 76:10-16.  Lastly, Mr. Gasperoni reviewed the Inspection Logs and testified that the porter swept the floor from 7:50 a.m. to 7:57 a.m. and then from 8:48 a.m. to 8:59 a.m. on the day in question.  *Id.* 78:1-15; 81:16-25. No issues were reported during these sweeps.  *Id.* 82:1-15.

Plaintiff submitted an expert report from her liability expert, Sylvia Deye.  Expert Report, ECF No. 34, Ex. D.  Defendants contest that Ms. Deye is a liability expert and instead argues that she is a licensed professional architect who will likely be recognized as an expert in the field of architecture.  Reply 2, n.1.  Ms. Deye made the following filings:

1. The exposed cord was unsecured and laid across the walkway and was dangerous in a manner that caused [Plaintiff] to trip, fall and be injured.

2. The exposed loose cord was dangerous because it was an obstruction and a tripping hazard that was not reliably apparent to patrons using reasonable care such as [Plaintiff].

3. The failure of those responsible to identify and correct the loose unsecured cord violated the applicable standards for safe walkways and made the walkway dangerous in a manner that caused [Plaintiff] to trip, fall and be injured.

4.  The failure of [Defendants] to identify and secure the cord was unreasonable and violated the applicable codes and standards of care for safe walkways and created the dangerous condition that caused [Plaintiff] to trip, fall and be injured.

Expert Report, p. 5.

## II.     Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted.  Fed. R. Civ. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor.  *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

"The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact."  *Bavone v. Primal Vantage Co., Inc.*, No. 2:21cv1260, 2024 WL 756815, at *1 (W.D. Pa. Feb. 21, 2024).  When the moving party carries their burden, the summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Further:

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).  Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial.  *See id*.  If the non-moving party does

not respond in this manner, the court, when appropriate, shall grant summary judgment.  Fed.R.Civ.P. 56(e).

*Mahaven v. Pulaski Twp.*, 139 F. Supp. 2d 663, 664–65 (W.D. Pa. 2001), *aff'd*, 45 F. App'x 155 (3d Cir. 2002); *see also Bavone*, 2024 WL 756815, at *1 ("Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.").

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment.  Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment.  *Liberty Lobby*, 477 U.S. at 248.

## III.    Discussion

To state a claim for negligence, a "plaintiff must establish that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached its duty; (3) a causal connection exists between the defendant's conduct and the plaintiff's injury; and (4) the plaintiff suffered actual loss or damage."  *Larkin v. Super Fresh Food Markets, Inc.*, 291 Fed. App'x 483, 484 (3d Cir. 2008) (applying Pennsylvania law).

Here, the parties agree that Plaintiff was an invitee.  Br. in Supp., p. 12 (citing duty of care that applies when plaintiff is an invitee); Resp. in Opp. 11 (same).  Therefore, a business owes

7

invitees a "duty of maintaining the premises in a reasonably safe condition . . . for the purposes for which the invitation to customers [is] extended." *Larken*, 291 Fed. App's at 484 (quoting *Regelski v. F.W. Woolworth Co. of Pa.*, 225 A.2d 561, 562 (1967)).    The Third Circuit, provides the following as to when a duty of care is breached:

> Under Pennsylvania law, a business breaches its duty to an invitee if the business:
>
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
>>
>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>>
>> (c) fails to exercise reasonable care to protect them against the danger.
>
> *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120, 123 (1983) (quoting Restatement (Second) of Torts § 343 (1965)).  To establish a breach of duty, the first prong of that test requires an invitee to "prove either that the proprietor had a hand in creating the harmful condition, or that he had actual or constructive notice of such condition." *Moultrey v. Great A & P Tea Co.,* 281 Pa.Super. 525, 422 A.2d 593, 598 (1980).  If the plaintiff does not produce a genuine issue of material fact about the defendant causing the condition or having notice, then the business did not breach its duty and summary judgment is appropriate.  *Cf. id.* at 598 (affirming a compulsory non-suit because the plaintiff offered no evidence that the defendant created or knew of the condition that caused the plaintiff to slip).

*Id.* at 484-85.

Plaintiff does not allege that Defendant created the dangerous condition at issue.  Br. in Opp. 13.  Additionally, Plaintiff has not presented any argument or evidence that Defendant had actual notice of the condition.  "Actual notice exists if the store had been warned about the condition . . . beforehand," *Canton v. Kmart Corp.*, 470 Fed. App'x 79, 83 (3d Cir. 2012), or where a condition frequently reoccurs, *Barrese v. Scott's Express Peach, Inc.*, Civil Action No. 1:10-cv-186-SPB, 2020 WL 5849666, at *7 (W.D. Pa. Sep. 30, 2020).  Here, there is no evidence that

Defendant was informed of the loose wire prior to the incident or that the loose wire was a condition that was frequently present.

Therefore, Plaintiff must present evidence that Defendant had constructive notice of the condition at issue. "Pennsylvania courts accredit a business with constructive notice of a dangerous condition when 'the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it.'" *Larkin*, 291 Fed. App'x at 485 (quoting *Moultrey v. Great A & P Tea Co.*, 422 A.2d 593, 596 (Pa. Super. Ct. 1980)). As explained by the Third Circuit:

> Although several factors may play a role when analyzing whether a defendant had constructive notice of a dangerous condition, *see Lanni v. Pa. R.R. Co.,* 371 Pa. 106, 88 A.2d 887, 889 (1952), the length of time that the condition existed is "'one of the most important factors,'" *Neve v. Insalaco's,* 771 A.2d 786, 791 (Pa. Super. Ct. 2001) (quoting *Rogers v. Horn & Hardart Baking Co.,* 183 Pa.Super. 83, 127 A.2d 762, 764 (1956)). Thus, Pennsylvania courts accredit a business with constructive notice of a dangerous condition when "the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." *Moultrey,* 422 A.2d at 596. This length of time varies with the circumstances. *Neve*, 771 A.2d at 791 (citing *Rogers,* 127 A.2d at 764). Nonetheless, Pennsylvania courts commonly treat a plaintiff's failure to provide evidence of timing as dispositive. *See, e.g.*, *Lanni,* 88 A.2d at 888 (reversing the denial of defendant's motion for judgment notwithstanding verdict where the plaintiff slipped on a grease spot but "*there was no evidence [showing] how long it had been on the driveway* "); *Porro v. Century III Assocs.,* 846 A.2d 1282, 1286 (Pa. Super. Ct. 2004) (affirming summary judgment because the defendant "admitted in his deposition he does not know how long the substance he slipped on was present"); *Estate of Swift v. Ne. Hosp. of Philadelphia,* 456 Pa.Super. 330, 690 A.2d 719, 722 (1997) (affirming summary judgment because the defendant did not present evidence regarding "how long the condition existed").

*Larkin*, 291 Fed. App'x at 485.

Here, Plaintiff has presented no evidence as to the amount of time the loose wire constituted a dangerous condition. There is no evidence that Plaintiff, a third-party, or any employee of Defendants observed the loose wire before the accident. Additionally, Defendants' employees

inspected the area approximately twenty-five minutes prior to the accident and did not observe any loose wire.

However, even though Plaintiff has presented no evidence as to the length of time the loose wire was present, Plaintiff does correctly argue that "a protruding wire under a fruit display case is very different than a liquid or piece of food on the floor . . ., which easily could be dropped by a customer and Defendants may not have notice in time to remedy the defect." Resp. in Opp. 15. This is because Pennsylvania courts treat transitory conditions, like spills, different from defects with an inherently sustained duration.

Specifically, a plaintiff is not required to produce testimony as to how long a defect existed if: "(1) the defect is of a type with an inherently sustained duration, as opposed to a transitory spill which would have occurred an instant before the accident; and (2) a witness saw the defect immediately before or after the accident." *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001) (holding that a jury could find that a "raised metal grate constituted a more durable defect than a spill or piece of fruit on the floor"); *Hlywiak v. National Railroad Passenger Corporation*, 223 F. Supp. 3d. 395, 399 (E.D. Pa. 2016) (finding that a hill present in a seventy-five-pound mat was not a transitory condition that could have occurred an instant before the accident); *Stover v. Chester Downs and Marina, LLC*, Civil Action No. 23-1416, 2024 WL 1333363, at *5 (E.D. Pa. March 28, 2024) (finding that the presence of a rubber base, without the attached traffic pole, was not a transitory condition); *but cf. Cox v. Wal-Mart Stores East, L.P.*, Civil Action No. 07-2391, 2008 WL 4072804, at *10 (E.D. Pa. Aug. 26, 2008) (holding that an oil spill was a transitory condition and there was nothing inherent about the condition); *Crawford v. Grocery Outlet Bargain Market*, 283 A.3d 384 (Pa. Super. Ct. 2022) (unpublished table decision) (finding that a

ripple or bump in a carpet, near the entrance of a grocery store, was not one of an inherently sustained duration).

Here, despite Defendants' arguments to the contrary, when comparing the facts of this case to those detailed above, the Court concludes that the loose wire is of the type with an inherently sustained duration, as opposed to a transitory spill which could have occurred an instant before the action.  Therefore, the nature of the condition requires that a jury decide whether Defendants had constructive notice and summary judgment is not appropriate.

The Court acknowledges that Plaintiff has additionally argued that summary judgment is not appropriate because the doctrine of *res ipsa loquitur* is applicable to these facts.  Resp. in Opp. 17.  Defendants have not addressed Plaintiff's arguments concerning *res ipsa loquitur*.  Because the Court has determined that summary judgment is not appropriate for the above reasons, and because Defendants have not raised any arguments concerning *res ipsa loquitur*, the Court will not address Plaintiff's arguments at this time.

IV.    **Conclusion**

For the reasons discussed above, the Court will deny Defendants' Motion for Summary Judgment.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: February 24, 2025

cc: All counsel of record